MARY E. CUNNINGHAM, APPELLEE, V. MODERN BROTHERHOOD
OF AMERICA, APPELLANT.

FILED SEPTEMBER 26, 1914.   No. 17,787.

1. Insurance: FORFEITURE. Where the secretary of a fraternal benefit
association voluntarily advanced the dues or assessment of the as-
sured for the month of June, and the next July, without the knowl-
edge or consent of the assured, undertook to reimburse himself out
of the funds sent to him by the assured to pay his July dues or assess-
ment, and thereupon canceled the beneficiary's certificate and sus-
pended the membership of the assured, the orders of cancelation and
suspension were void, and a subsequent order attempting to reinstate
the member was unnecessary, as the membership continued without
interruption, and in such case there would be no requirement upon
the part of the assured to make any statement concerning his con-
dition of health with a view to securing his reinstatement as a mem-
ber of the association.

2. ———: ———. And where the secretary of the association there-
after received the dues or assessments from the assured for each of
the months of July, August, September, October, November, and De-
cember, and remitted the money received to the head office, as required
by the rules of the association, it will be considered that the associa-
tion has failed to establish a forfeiture of the certificate because of
any failure to pay the dues or assessments; the fact being shown that
the money paid for the several months mentioned was retained, and
that the assured died in the latter month, concerning which there
was no complaint of nonpayment of dues.

3. ———: ACTION ON POLICY: BURDEN OF PROOF: HEALTH OF APPLI-
CANT. Where the assured, shortly prior to making his application
for membership in the association, was treated for catarrh in the
head, and still prior to that time had been treated for lumbago or
rheumatism in the back, but there was no evidence to show that the
particular disease which caused his death had been contracted before
the beneficiary certificate issued, it will not be considered that an
inquiry can be made as to whether the disease of which the assured
died was latent in his body. The fact that he had other complaints
than the particular one which caused his death places the beneficiary
under no obligation in case of suit to show that the assured was
sound as to the particular complaint causing his death at the time
that the certificate issued and he was admitted to membership.

4. ———: ———: ———: ———. In an action upon a beneficiary
certificate, it is not proper to place the burden of proof upon the

beneficiary to show that at the time the certificate issued the assured was free from the particular infirmity which ultimately caused his death.

5. ———: ———: INSTRUCTIONS: APPLICATION. The following instructions given at the request of the plaintiff are held to fairly submit to the jury the good faith of the assured in answering the questions contained in his application: No. 6. ''You are instructed that, if you believe any of the answers in the application for insurance are incorrect or untrue in reference to a matter of opinion or judgment, and if you believe that said answers were made.in good faith and without intention to deceive, then in that event the incorrectness or untruth of said answers shall not prevent the plaintiff from recovering, if upon all the other facts he be entitled to recover.'' No 7. ''You are instructed that, if you believe that the answer, upon any fair interpretation of the meaning of the question in the benefit certificate application, as it might have been understood by the applicant, may be deemed a true answer, then, in that event, no forfeiture of the rights of the plaintiff shall be permitted, for that reason, if, upon all the other facts, plaintiff be entitled to recover.''

6. ———: CONTRACT: ENFORCEMENT. Persons engaged in a life insurance business should be required to take the risk that properly belongs to the business, and the right of the beneficiary to recover should not be made to depend upon the skill, intelligence and accuracy of knowledge possessed by the assured touching his own physical condition. If the association has had an opportunity to examine the applicant by means of its physician, and voluntarily assumes the risk without deception upon the part of the assured, it should be held to the contract.

7. Trial: INSTRUCTIONS. In this case complaint is made by the defendant of instruction No. 2, given at the request of the plaintiff. Instructions should be read and construed together, and, if as a whole, they state the law correctly, they will be held sufficient, although one or more of them, considered separately, may be subject to just criticism. *Brown v. Chicago, B. & Q. R. Co.*, 88 Neb. 604; *Boesen v. Omaha Street R. Co.*, 83 Neb. 378.

8. Instructions examined in the body of the opinion, and *held* not to be prejudicial.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*A. H. Burnett* and *C. T. Dickinson*, for appellant.

*T. E. Brady, contra.*

HAMER, J.

The defendant, a fraternal benefit association, organized under the laws of the state of Iowa, appeals from a judgment rendered in the district court for Douglas county. The defendant was authorized to do business in Nebraska at the time it issued the beneficiary certificate sued on. On or about March 17, 1910, Thomas Cunningham, who was then residing at Mitchell, South Dakota, through the local lodge at Mitchell, presented his application for membership to the defendant. It was approved by said defendant and the certificate sued on was issued. The assured died in December, 1910. The certificate contained the following conditions: "I further agree that any failure to pay any fines, dues or assessments required by said Modern Brotherhood of America, within the time therein provided, shall forfeit the rights of myself and my beneficiary or beneficiaries to any and all benefits to be derived from my membership in said society." Also: "It is further agreed by and between the parties to this contract that should said member fail to pay any assessments, dues, fines or charges upon him, as required by the by-laws, rules and regulations of the society, promptly when due, his membership shall thereupon cease, and this certificate shall be void, and all money paid thereunder shall be forfeited to the society."

It is claimed by the defendant that the assured did not pay the assessment for the month of July, 1910, during the month of July, 1910, and that because of such failure he was suspended, and that his beneficiary is not entitled to any benefits under said certificate. It is alleged in defendant's brief that the assured was residing in the city of Omaha, Nebraska, at the time he failed to make said payment, and that he continued to reside there until the time of his death, December, 1910; that in August, 1910, he remitted to the secretary of the local lodge at Mitchell, South Dakota, the assessment for July, 1910, and that he did not inform the secretary at that time that he was sick and under the doctor's care, and that the said secretary, in receiving said money and issuing a receipt for the

same, had no knowledge of the physical condition of said Cunningham.

The by-laws of the defendant association provided that the assured was required to make all payments for assessments during the calendar month following the levy, and, upon failure to make such payments, he forfeited all rights and interests which he might have in said certificate; also, that the assured, after his rights had been forfeited, might be reinstated by making said payments within 60 days from the date of suspension, provided he was in good health at the time of making such payment for reinstatement; also, that, in case he was not in good health, the receipt of such assessment would not reinstate him, and his beneficiary would not be entitled to receive any benefits under the certificate.

The appellant admitted the execution and delivery of the benefit certificate and the death of the assured, Thomas Cunningham, but sought to defend upon the grounds set out:  (1) That the assured did not pay his assessment for the month of July, 1910, and was thereby suspended, by reason of which the certificate and all rights under it became forfeited; (2) that his reinstatement was not effective because the officers of the association did not know his physical condition and that he was in poor health at that time; (3) that he did not truthfully answer the questions in the application.   There was a reply filed by the appellee to the defendant's answer.   It denied each and every allegation.

On the issues as above set forth, there was a trial to a court and jury in Douglas county on or about March 15, 1912.   The case was submitted to the jury, which rendered a verdict in favor of the plaintiff, the appellee herein, for $1,000, with interest, and the court on the 2d day of April, 1912, overruled the motion for a new trial and rendered judgment against the defendant for $1,078.84 and costs, together with interest at 7 per cent. from March 15, 1912.

The secretary of the Mitchell lodge No. 740, R. E. Cone, was called as a witness for the defendant, and testified that there was in the minutes of said lodge a resolution

which authorized him to pay the assessments and dues of any member who would otherwise become delinquent; for one time, and that, pursuant to that resolution, he had personally paid the assessment and dues of Thomas Cunningham for the month of June, on June 30, 1910. That on July 8, 1910, he received a letter from Thomas Cunningham, which reads as follows: "7-7th-10th. Mr. R. E. Cone, Mitchell, S. D. Dear Sir: Inclosed please find draft for $1.75 for this month's assessment in M. B. A. Yours truly, Thos. Cunningham." That said letter contained a draft for $1.75, which was the amount required for the payment of the July assessment of Thomas Cunningham and his wife. That he did *not* credit Thomas Cunningham or his wife on the books of the lodge with the payment of July assessment for $1.75 so received, but *took said money to reimburse himself for the money advanced for the June assessment.* That he did not remember that he ever notified Thomas Cunningham that he had paid his June assessment or that he had not credited him with his July payment until about September 1, 1910. That on August 31, 1910, he received from Thomas Cunningham a letter, which reads as follows: "Omaha, Nebr. 8-30th-10. Mr. R. E. Cone, Mitchell, S. D. Dear Sir: Inclosed please find draft to cover my dues for August and September. Yours truly, Thos. Cunningham, Suite 1013. City National Bank." That said letter contained a draft sufficient to pay two months' assessments and dues.

On September 1, 1910, the secretary of the Mitchell lodge, R. E. Cone, wrote a letter to Thomas Cunningham, which reads as follows: "September 1, 1910. Mr. Thos. Cunningham, Suite 1013, City National Bank, Omaha, Neb. Dear Sir: Yours of the 30th at hand, inclosing draft for $3.50, which you state is in payment for August and September. Beg to say that you did not pay the July assessment and I was consequently obliged to suspend you on this account, however I am now reinstating you and inclose receipt for July and August. Your September assessment must be received by me by the 30th if you wish to avoid suspension. Yours truly, R. E. Cone, Secretary."

There was inclosed therein a receipt, which reads as follows:

## "MODERN BROTHERHOOD OF AMERICA.

"Reinstated.

"Mitchell Lodge No. 740.

"8-31-1910.

"Received of Thomas & Mary Cunningham, the sum of three and 50-100 dollars.

Charter of membership fee $———.

Supreme Lodge (payment of ass'ts Nos. 7 and 8, Series 1910) ...............................$2.90

Local Lodge Dues (Jul. and Aug. 1910) .......... .60

Total ................................... 3.50

No.———.                        R. E. Cone, Secretary."

This witness Cone testified that he did not remember that he ever demanded of Thomas Cunningham that he (Cunningham) should reimburse him for the June assessment which he had advanced, also that he was never authorized by Thomas Cunningham to use the money sent on July 7, 1910, to reimburse himself for the June assessment advanced. He also testified that the payments for the months of September, October, November, and December, 1910, were each and all of them paid before they became delinquent, and that Thomas Cunningham died in December, 1910. The assured in the instant case had been chief of police at Mitchell, South Dakota. Mr. Cone testified that during the last few months that Cunningham lived at Mitchell he was quite hoarse. "Brady: Can you tell approximately when it was that you talked with Thomas Cunningham you observed his hoarseness? Cone: My recollection is this: That Thomas Cunningham was hoarse, and I am certain that he had his throat bandaged at the time of his initiation into the Modern Brotherhood of America, which I think was in March, 1910. Brady: Did you observe at any other time after the time of the initiation of Thomas Cunningham this same hoarseness? Cone: Not to my recollection."

At this point it is proper to say that the secretary paid the June assessment for Cunningham. The association had passed a resolution which provided, in substance, that if a member failed to pay an assessment the secretary of the association was authorized to pay it for him. Under this arrangement Cone paid the assessment of Cunningham for the month of June, 1910.

"Brady: When you paid the June assessment for Thomas Cunningham, you paid same in your individual capacity, I understand you. Is that true? Cone: It is to this extent, that the resolution I spoke of provided for reimbursing him personally out of the general fund of the local lodge unless Mr. Cunningham did so. * * * Brady: About the 20th of June your custom would be to mail to every member who had not paid the June assessment a notice to be sure and pay it by the 30th, or something to that effect, and you think you probably mailed one to Mr. Cunningham? Cone: Probably so. Brady: You have no recollection whatever on that question? Cone: No. Brady: But on June 30 you paid his June assessment? Cone: I did. Brady: Now, did you afterwards write him and demand that he reimburse you for that June payment? Cone: I do not remember. Brady: Did he ever write to you authorizing you to use the money which he sent you on the 7th day of July to reimburse yourself for the June payment? Cone: No, sir. Brady: Did he ever authorize you verbally to do so? Cone: No, sir." Redirect examination. "C. T. Dickinson: Would you have made the payment for the June assessment, had it not been for the resolution passed by the local lodge? R. E. Cone: It is altogether likely that I would. It was my custom before the resolution was passed. Dickinson: To do that one time? Cone: Yes, sir."

It will be seen that the payment June 30, 1910, prevented Cunningham from being in default. The next question to ask is: Was he ever in default? The evidence shows that Cunningham sent to the secretary money to apply on the July assessment, also on the August assessment, and that

96 Neb. 53.

he also paid the assessments of September, October, November, and December before they were delinquent, although Cunningham died in the latter part of the month of December. Cone, the secretary of the local lodge, undertook to cancel the certificate. In order to do that, he took out of the money that was sent to him for July enough to reimburse himself for the money that he had advanced in June. The evidence shows that he was not authorized to do that, and that what he did was done without any agreement with Cunningham and without consulting anybody else. Therefore his attempt to cancel the certificate and then to reinstate Cunningham was futile. He had no right to cancel his membership, and, as he had no right to cancel his membership, there was no cancelation, and therefore no need of reinstatement. .

"Brady: Were the payments of Thomas Cunningham on Policy 6772 for the months of September, October, November, and December paid before delinquent? Cone: Yes, sir. * * * Dickinson: Did you yourself advance the assessment for Mr. Cunningham for the month of December, 1910? Cone: It was not necessary to advance it for the reason that he died before the end of the month, but it was received prior to the time I made my remittance to the head office." Cone testified that he received the money for the December assessment from I. W. Aikin of Omaha, and that he took the money and "applied it in payment for his (Cunningham's) December assessment." "Brady: Is it a fact or not that, at the time of your examination of the applicant, Thomas Cunningham, appeared to be in good health? Bobb: He appeared to be. Brady: State whether or not at the time you examined him on March 9, 1910, you discovered the applicant to be suffering from any disease or ailment? Bobb: I found none at that time. Brady: At the time you examined him in January, 1910, did you examine his throat? Bobb: I did not. Brady: State whether or not it was a fact that Mr. Cunningham was a trifle hoarse at the time of the examination and for some considerable time prior thereto? Dickinson: What was that? Brady: A trifle hoarse. Bobb: As near

as I can remember, he might have been. Brady: State whether or not he had been hoarse at different times off and on for some time prior to that examination? Bobb: He had long had a husky voice. Brady: Had you ever talked to him or advised with him as to that condition? Bobb: I never did. I never thought anything of it. * * * Brady: State whether or not at the time of the examination of Thomas Cunningham on March 9, 1910, you considered the hoarseness or huskiness of voice to which he had been subject a matter of any seriousness or gravity? Bobb: I did not consider it at all." Bobb subsequently testified that he examined Cunningham's condition with respect to his heart and lungs, and that he found the lungs and heart to be healthy.

Dr. Reamer testified that he treated the assured for a diseased sore throat in March, April, and May, 1910. He testified that Cunningham had an ulcer of the epiglottis, which he diagnosed as tubercular. He thought that it was along in April, 1910. It was some eight months before he died. He testified that he treated the throat first May 5, 1909, and last, May 10, 1910; that in January, 1910, he removed a growth from the nose of the assured; that in February he did not treat him at all. "Brady: Nor again until the 12th of March? Is that a fact? Reamer: According to my books. I would not be able to answer these so definitely if I did not refer to my books. Brady: State whether or not up to the 12th day of March you considered Thomas Cunningham to be suffering with any severe disease? Reamer: Not suffering from the same disease that I later diagnosed as tuberculosis." Dr. Reamer testified that there was a tubercular ulcer in the epiglottis, which is a part of the windpipe, a part of the trachea; it is a cap that fits right over the windpipe or trachea, and that ulcer was located immediately under and a little to the left. "Brady: You may state whether or not you made any tests of this ulcer to determine whether or not it was tubercular, aside from your judgment by looking at it? Reamer: As I remember, I did not. Brady: State whether or not prior to March 9, 1910, you ever told Thomas

Cunningham that he was suffering with any severe sickness or disease from which he would not recover?   Reamer: No.  *  *  *  Brady: If you can refresh your recollection, will you state whether or not during the months of October, November, and December, 1909, and January, 1910, you one or more times advised Thomas Cunningham that, if he would quit the police force so he could stay in out of the storms and take care of himself and rest up, he would probably get all right in a little while, or something to that effect?   Reamer: As I remember, I did."

As the secretary, Cone, under the resolution of the local lodge, paid the June assessment, there was nothing to pay for June.   July 8, 1910, Cunningham sent Cone $1.75 to pay for the month of July.   He said in his letter: "For this month's assessment in M. B. A."   Cone took *that* money to reimburse himself.   He was without authority to do this.   The money should have been applied as ·Cunningham desired it to be applied—on the July assessment. There was no power to place it anywhere else.   August 30 Cunningham sent to Cone enough money to pay the August and September assessments, $3.50.   On the receipt of that letter Cone wrote a letter to Cunningham informing him that he had not paid the July assessment, and therefore that he (Cone) was obliged to suspend him, but at the time of writing the letter he was "now reinstating you and inclose receipt for July and August."   Cone had no authority to suspend Cunningham's membership because he failed to pay the July assessment.   Cone was without authority to take the money and to pay a debt that was due from Cunningham to himself.   If the plan adopted by the secretary of the association could be enforced, it would lead to a most unsatisfactory jugglery of receipts, assessments, and suspensions.   It is clear from an examination of the testimony that Cunningham should not have been suspended for the month of July.   As there was no suspension, there was no necessity to accompany the money sent to the secretary with any statement concerning the condition of the assured.

There is some contention on behalf of the defendant that there was deception upon the part of the assured at the time he made application for and received the certificate. The assured stated in his application that he had been last treated for bronchitis in November, 1909, by Dr. C. S. Bobb, and that there was a complete recovery. Dr. B. A. Bobb testified that he gave Thomas Cunningham some X-ray treatment for lumbago or rheumatism in the back in November, 1909. Dr. Reamer testified that he treated Cunningham for catarrh in the head in October, November, and December, 1909, and in January, 1910. Cunningham does not seem to have been treated for anything for about two months prior to the date of his application. The things for which he was treated prior to making his application are not shown to have contributed to his death. There was, therefore, no sufficient showing that the defendant was imposed upon by fraud, and that the association was induced thereby to issue the beneficiary certificate. Dr. B. A. Bobb, who examined Cunningham, thought he was a first-class risk. Cunningham himself does not appear to have had any knowledge that he was a dangerous risk. Besides, it is for the jury to say whether the answer given by the assured was given in good faith. *Modern Woodmen of America v. Wilson,* 76 Neb. 344. The insurance never lapsed at any time, so the defendant had no rights that could have been prejudiced under the consideration of that issue. The payment July 8 paid the July assessment.

One who receives and appropriates to his own use money sent him for a particluar purpose will be held to have received and retained it in accordance with *the purpose for which it was sent. Life Insurance Clearing Co. v. Altschuler,* 55 Neb. 341.

A debtor may, at or before the time of payment, prescribe the application of said payment, and it is the duty of the creditor to so apply it. If the creditor receives money with the direction from the debtor to appropriate it to a particular debt, it must go to that debt, no matter what the creditor may say at the time, and an appropria-

tion made by the debtor cannot be changed by the creditor without the debtor's consent. *City of Lincoln v. Lincoln Street R. Co.,* 67 Neb. 469.

Where the insured directed payment to be applied on the last assessment and the secretary of the lodge applied the same on a former assessment, such application was invalid. *Burchard v. Western Commercial Travelers Ass'n,* 139 Mo. App. 606.

It must be clear that, as Cunningham directed the money sent on the 7th of July to be applied on the July assessment, therefore there was no lapse in July. Cone could not take the money intended to pay the July assessment and pay himself what he had advanced in June. There was no agreement about it, and what Cone undertook to do was arbitrarily done, and without authority. If there was no lapse in July, there never was any lapse, because all the payments were made. If the assured never lapsed, he never needed to be reinstated. For that reason, there is no necessity of considering the question of suspension and reinstatement.

An incorrect answer in an application for life insurance in reference to matters of opinion or judgment will not avoid the policy if made in good faith and without the intention to deceive. *Royal Neighbors of America v. Wallace,* 73 Neb. 409; *Bryant v. Modern Woodmen of America,* 86 Neb. 372.

Instruction No. 6, given by the court upon its own motion, is claimed by the defendant to be prejudicial. We cannot quote this instruction because of its length without unduly extending this opinion. It submits to the jury the good faith of the assured in procuring the certificate, and tells them that they may consider the rules and regulations of the order, the questions and answers in the application, and the evidence. We are not told how this is prejudicial to the defendant, and to us it seems to be reasonably fair and appropriate.

There is a complaint by the defendant against instructions Nos. 6 and 7, requested by the plaintiff and given. They read:

No. 6. "You are instructed that, if you believe any of the answers in the application for insurance are incorrect or untrue in reference to a matter of opinion or judgment, and if you believe that said answers were made in good faith and without intention to deceive, then in that event the incorrectness or untruth of said answer shall not prevent the plaintiff from recovering, if upon all the other facts he be entitled to recover."

No. 7. "You are instructed that, if you believe that the answer, upon any fair interpretation of the meaning of the questions in the benefit certificate application, as it might have been understood by the applicant, may be deemed a true answer, then, in that event, no forfeiture of the rights of the plaintiff shall be permitted, for that reason, if, upon all other facts, plaintiff be entitled to recover."

These instructions seem to fairly submit to the jury the good faith of the assured in answering the questions contained in his application, and we are not told by the defense in what way these instructions are prejudicial.

Instruction No. 2, requested by the plaintiff and given by the court, is as follows:

No. 2. "You are instructed that in answering to a question of such application for the name of the ailment or ailments for which the assured has been treated, and the names of the physicians who treated him therefor, the assured is not required to give the name of every ailment, however trifling, or of every physician he has consulted, but may confine his answer to such ailments as are of a serious character."

The above instruction may be objectionable, but it does not seem that it could have been prejudicial as to the defendant, because the certificate was issued after the applicant had been examined by the physician furnished by the association, and when it is not claimed that there was concealment of any material fact affecting the health of the assured. The assured was not required to exercise better judgment or more intelligence concerning his condition than that which he actually possessed. Persons engaged

in carrying on a life insurance business should be required
to take the risk that belongs to the business, and the right
of the beneficiary to recover should not be made to de-
pend upon the skill, intelligence and accuracy of knowl-
edge possessed by the assured touching his own physical
condition.   It is easy to understand that his judgment
might be of but little value concerning a latent infirmity
or disease which he might have.

We have examined the other instructions given, of which
complaint is made, and see nothing which seems to us to be
seriously objectionable or prejudicial.   We think that the
instructions, considered as a whole, fairly state the law.

In *Sioux City & P. R. Co. v. Finlayson,* 16 Neb. 578, this
court held in the syllabus: "Instructions given to a jury
must be construed together, and if, when considered as a
whole, they properly state the law, it is sufficient."   In
the body of the opinion instructions Nos. 2, 3 and 4 are
discussed together.   It was held that the three instruc-
tions, considered together, properly state the law.

If an instruction, considered as a whole, states the law
correctly, as applied to the evidence in the case, it is not
erroneous, although a portion thereof, taken separately,
may not have been accurate.   *Smith v. Meyers,* 52 Neb.
70.   In the above case there were four instructions given
at the request of the plaintiff.   Two other instructions
were given at the request of the defendant.   In the body
of the opinion it is said: "It is a familiar rule that in-
structions must be construed as a whole.   When thus con-
sidered, if they fairly state the law, it is sufficient."   Sev-
eral decisions of this court are cited in support of the
statement.

"The true meaning of instructions is to be determined,
not from a separate phrase or paragraph, but by consid-
ering all that is said on each subject or branch of the case."
*Lincoln Traction Co. v. Brookover,* 77 Neb. 221.   *Vander-
veer v. Moran,* 79 Neb. 431; *Neeley v. Trautwein,* 79 Neb.
751.

In *Lincoln Traction Co. v. Brookover, supra,* it is said
in the syllabus: "(3) The true meaning of instructions

is to be determined, not from a separate phrase or para-
graph, but by considering all that is said on each subject
or branch of the case.   (4) An instruction which, if stand-
ing alone, might be erroneous, may not be so when con-
sidered with other instructions upon the same subject
given in connection therewith."

In *Vanderveer v. Moran, supra,* the syllabus says: "In-
structions must be taken together and their true meaning
determined by considering all that is stated on each par-
ticular branch of the case."   In the body of the opinion
it is said:   "The defendant objected to instruction No. 5
on the ground that it did not contain a statement of the
duties imposed by law upon the injured person, and to
instruction No. 15 on the same ground, and upon the fur-
ther ground that it was a repetition and gave undue prom-
inence to the matters contained in instruction No. 5.   In
at least five other paragraphs of the instructions of the
court contributory negligence was properly defined, and
the jury were plainly told that, if the plaintiff's son was
guilty of want of ordinary care on his part, the plaintiff
could not recover.   Instructions must be considered to-
gether.   *Philamalee v. State,* 58 Neb. 320.   Their true mean-
ing and effect must be determined by considering all that
is said on each particular subject or branch of the case.
*St. Louis v. State,* 8 Neb. 405.   The same reasoning ap-
plies to the defendant's objections to instruction No. 7,
of which it is complained that it fails to tell the jury that,
if the act of the defendant was not the proximate cause
of the injury, he would not be liable.   If this instruction
was deficient in that respect, it was amply cured by in-
struction No. 3 given at the request of the defendant."

In *Neeley v. Trautwein, supra,* it is said in the sylla-
bus:   "Instructions must be considered together, and their
true meaning and effect must be determined by consider-
ing all that is stated on each particular subject or branch
of the case."

Instructions should be considered together, separate
clauses or parts of a sentence should not be separated from
the context in order to arrive at the true meaning of the

language, and all that is said upon the particular subject is to be taken together. *Boesen v. Omaha Street R. Co.,* 83 Neb. 378. In the body of the opinion it is said: "Instructions should be considered together. Separate clauses or parts of a sentence should not be disconnected from the context, if it is desired to obtain the true meaning of the language. Taking the two instructions referred to together, while the language of the latter may not be entirely proper, we think it impossible that the jury could have been misled with regard to the extent of the duty imposed by law upon the defendant with regard to the care of its passengers, and, when considered in connection with the evidence in this case, we cannot see how this language, even if objectionable in nature, in anywise prejudices the defendant."

"Instructions should be read and construed together, and, if as a whole they state the law correctly, they will be held sufficient, although one or more of them, considered separately, may be subject to just criticism." *Brown v. Chicago, B. & Q. R. Co.,* 88 Neb. 604. In the body of the opinion it is said: "Instructions must be read and construed together, and, if as thus considered they state the law correctly, should not be held prejudicially erroneous because one or more of them, taken separately, may be subject to just criticism."

In reviewing instructions, the charge to the jury should be construed as a whole. *Hans v. American Transfer Co.,* 90 Neb. 834.

We fail to ascertain any error in the case. The judgment of the district court is right, and it is

AFFIRMED.

SEDGWICK, J., took no part.