H. F. McCombs, Appellant, v. The Travelers Ins. Co., Hartford, Conn., Appellant and Anna R. Heether, Appellee.

Insurance:   FRAUD:   EVIDENCE.   Other fraudulent acts committed by the party charged with the original fraud may be shown to establish intent, or to show a scheme or purpose to defraud; but it must appear that they were done at the instance of the party charged, or with his knowledge, consent or acquiescence, and must tend to show that in doing the acts he had a purpose and intent to defraud. Thus before it can be shown upon an issue of fraud in procuring a policy of life insurance, that the wife, as beneficiary,

and a third person procured additional insurance on the life of deceased, based upon the original application and medical examination, it must appear that they acted with the knowledge or consent, or under the direction of the insured.

**Same.** Even though an insured was not at the time a fit subject for insurance, that fact alone would not establish fraud. And where there was nothing to show that the representations of the applicant regarding his health were not made in good faith, and it appeared that after issuance of the policy he underwent a medical examination and then refused to believe that he was a sick man, there was not sufficient evidence of fraud to avoid the policy.

**Same.** An insured person can only be charged with such fraud or concealment of his physical condition as was knowingly committed by him with intent to deceive; he is in no manner responsible for the fraudulent concealment of an examining physician for the insurer.

*Appeal from Marshall District Court.*—Hon. Clarence Nichols, Judge.

Tuesday, May 6, 1913.

Action upon a policy of insurance upon the life of one J. A. Heether. Cause tried to a jury. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Cummings & Mote* and *Clark, Byers & Hutchinson,* for Travelers' Ins. Co., appellant.

*F. E. Northrup,* for appellee, Anna R. Heether.

*Bradford & Johnson,* for plaintiff and appellee.

Gaynor, J.—It appears that, on the 22d day of June, 1909, one John A. Heether made written application to the defendant company for life insurance, in the amount of $1,000. That, in the application so made, he stated, among other things, that he was sound mentally and physically, had

never had any bodily infirmity or deformity, and had not been disabled, and had not received surgical attention within five years, except that he had a small accident claim with the Travelers' Accident Association the year previous. That he was examined by the company's physician, being its regular medical examiner, to whom he said, in answer to the following question, "What physician did you last consult?" "Dr. Jacobs, of Memphis, Tenn. On April 10, 1909, for acute indigestion. I was not sick, simply consulting him. My present health is good." He also said in his application that no change of climate had ever been sought or advised for the benefit of his health, and said the same to the physician at the time of his medical examination. That, the application made by him and the report of the examining physician having been submitted to the defendant company, it issued to him its policy of insurance on the 28th day of June, 1909. It appears that this application was made at Moberly, Mo., and was taken by one Kelley, agent for the defendant company. It appears further that Heether and his wife left Moberly on the 23d day of June, 1909, and went to Marshalltown, where they visited with relatives a few days, and then returned to their home at Memphis, Tenn., arriving there July 4th.

Dr. Nichols of Marshalltown, testified that, when Heether was at Marshalltown on his visit, he noticed that he had fallen off in weight, and he did not think he was looking well. That his color was bad, and he did not have the appearance of a well man.

It appears that on or about April, 1909, Heether consulted Dr. Jacobs, at Memphis, Tenn., and it appears that the doctor then thought he was suffering from acute indigestion. It appears that after his return to Memphis, on July 4th, he again consulted Dr. Jacobs on the 8th of July, and at other times during July, and on the 9th of August, and Dr. Jacobs says: "He complained of an indefinite pain and a general feeling of pain, but I did not consider that

there was anything particularly the matter with him, but that it was biliousness. When he called on the 31st of July, he had lost a great deal in weight and complained of abdominal pains in the right side. I then began to fear some serious trouble and prescribed for him. I saw him again on the 3d of August and found his condition worse. I then recommended that he go to Atlantic City, in the hope that the change of climate would benefit him, and advised that he consult some New York specialist. I treated him the last time on the 9th of August." It appears that Heether and his wife started for Atlantic City the next day. That on the 13th of August Heether became worse and called in Dr. Marshall, who thereafter attended him each day, and sometimes more than once a day up to the 29th day of August, 1909, at which time he died. That the cause of his death was diagnosed as atrophic cirrhosis of the liver.

Dr. Marshall says: "After I had examined him I told him he was a sick man and that his condition would not improve rapidly. He did not agree with this. He said he had always been a well man, had never been sick, and that he had been working up to August 10th. At the time I first saw him, I thought he was suffering from atrophic cirrhosis of the liver."

Dr. Marvel, who visited him on the 19th, with Dr. Marshall, testified that it was his opinion that he was suffering from cirrhosis of the liver.

Dr. Devine, of Marshalltown, being called for the defendant company, testified:

If a heavy man consulted a physician on the 23d of June for some trouble, which the doctor diagnosed as biliousness, and he lost weight rapidly, complained of pain in the right side, became worse and went to Atlantic City on the 9th of August, on the 13th of August called physician and was treated every day therafter until the 29th of August, when he died, and the cause of his death was diagnosed by the doctors in charge as atrophic cirrhosis of the liver, that

man was not in good health in June previous. That with atrophic cirrhosis of the liver, after the patient had lost forty pounds in weight, that would usually be followed by a dropsical effusion, headache, and perhaps some nervous disorder like convulsions, than coma, and then death. The first symptoms are usually manifested before the loss of weight begins, and the man usually fancies he has trouble with his stomach. He is nauseated. His appetite is not good. He vomits more or less, especially in the morning. Has pain in the abdomen. Has a changed expression in his face. He has a peculiar expression. It is called hepatic face.

The plaintiff is the assignee of the beneficiary named in the policy, Mrs. Heether, and brings this action to recover the amount of the policy, stipulated there to be paid upon the death.

The defendant, answering the petition, alleges the fact to be that said policy was obtained from the defendant company, and the medical certificate and report were obtained from the physiscian (upon which the policy was issued) by fraud, false representations, and misstatements; that the certificate and report would not have been made, or the policy issued, had the truth been stated by the said Heether in his application for insurance and to the examining physician who issued the certificate of health. The false representations claimed to have been made are: ''That he was in sound condition mentally and physically; that he had not received medical or surgical attention within the past five years; that no change of climate had ever been sought or advised for the benefit of his health.'' That the company, in issuing the policy, relied upon the statements made by the applicant, and would not have delivered said policy, except for its belief that the statements were true. Defendant says that the statements so made were untrue. Upon the issues so tendered, the cause was tried to a jury and a verdict rendered for the plaintiff, and against the defendant for the sum of $1,095, and judgment entered upon the verdict, and, from the judgment so entered, the defendant appeals.

The defendant alleges as error, and bases his right to reversal, upon the action of the court in refusing to admit certain evidence offered by it, referring to transactions connected with a $3,000 policy issued later by the defendant on the life of the said Heether on the same application upon which the policy in question was issued, claiming that, the defendant having alleged fraud, this evidence was part of the same transaction and threw light on the preceding parts of the transaction directly involved in the suit. This being the only error assigned, this is the only matter to which we will direct our attention.

1. INSURANCE: fraud: evidence.

It appears that on June 22, 1909, Heether made application to the defendant company for insurance, and in the application stated the matters hereinbefore referred to. That he was examined by one Dr. Clapp, defendant's examining physician, and made the answers hereinbefore set out, which were duly signed by him and delivered by Clapp to the company. That, upon the application and report so made, the defendant company issued to the said Heether two policies of insurance of $1,000 each, the premium for which was duly paid. That the said Kelley, agent for defendant company, received from Mrs. Heether, wife of the assured, the following letter: "Memphis, Tennessee, July 20, 1909. Dear Len: The policies came alright and many thanks for same. Now, if I wanted to carry more could I do so without 'Ad' being any the wiser. I know he would not try keeping up any more, but I have a little income which I could use in this way, if nothing more is required of him. Please let this be in confidence and reply to house address. Let me know at your earliest convenience. If I could not (as wife) take out more insurance, could Mr. C. J. McCombs (my brother in law) take out for me; that is, payable to me as beneficiary. Yours sincerely, Mrs. J. A. Heether." In reply to the letter so received, the said Kelley informed Mrs. Heether, in effect, that she could get more insurance without Mr. Heether having to be examined any more.

Kelley was on the witness stand and testified: "At the time I took the application, June 22, 1909, I noticed, with regard to Heether's physical condition, that he had lost flesh and I talked with him about it. He said that he had been dieting himself. I had known him for some time. He had lost about forty pounds. This was apparent to me from looking at him. The exact amount, forty pounds, was some statement that he made to me, but I noticed, from his appearance, that he had lost flesh, and he said that he was dieting himself. He asked me who the examiners were, at the time, and I told him Dr. Clapp and Dr. Irwin, and asked him which one he wanted. He said, 'I want to use Dr. Clapp anyhow.' "

Thereupon the defendant offered in evidence a letter from Mrs. Heether to the said Kelley as follows, to which objection was urged and objection sustained: "Memphis, July 24, 1909. Mr. L. W. Kelley, Moberly, Mo.—Dear Lenn: Yours received; thanks for promptness. You just misunderstood my letter a little. I did not mean to infer that Mr. McCombs would take out insurance on Jennie's life, but if I could not take more on Ad's Mr. McCombs possibly could, do you see? But now it is all right, as you say, so I have written and sent your letter to Mr. Chas. J. McCombs, Marshalltown, Iowa, and he will let you know at once what to do in regard to increasing insurance of 'Ad's.' So please transact all this business and correspondence direct with him; also send policy to him as he will keep this business straight for me. Thanking you so much for your kindness in the matter, I hope I can do something for you or yours. Yours sincerely, (Mrs. A. J. Heether.)"

Defendant thereupon offered the following letter, to which objection was urged and objection sustained: "July 26, 1909. Mr. L. W. Kelley—Dear Sir: Just received letter from Mrs. A. Heether and she wants $3,000 more insurance on Mr. J. A. Heether. In favor of herself. Send policy to me at Marshalltown, Iowa, and send me amount of cost and

I will remit. She does not want Mr. H. to know of this. Very truly yours, C. J. McCombs."

Defendant offered also the following letter to which the same objection was urged and the same ruling made: "116 North Center St., Marshalltown, Ia. Wed. August 18, 1909. Mr. Leon W. Kelley: As we received no word from you in regard to policy, I write to find out what has been done. Mr. McCombs has been expecting you to draw daily for amt., but so far hasn't, what have you found out? Please reply and oblige. Yours sincerely, Mrs. C. J. McCombs."

The defendant offered these letters, touching the $3,000 policy, and offered to prove the circumstances under which the policy was taken out. The same was objected to and objection sustained. The plaintiff later offered a part of the cross-examination of the witness Kelley, taken in the form of a deposition, and this was also objected to and objection sustained.

The evidence offered tended to show, in brief, that on the 24th day of July, 1909, Mrs. Heether had written to the agent, Kelley, asking if she could obtain additional insurance upon her husband's life upon the same application and medical examination then on file; Kelley replied that she could; that later on July 26th, C. J. McCombs, Mrs. Heether's brother-in-law, wrote asking the agent, Kelley, to procure $3,000 more insurance on the life of Mr. Heether, in favor of his wife, upon the same application; that still later, on August 18th, Mrs. C. J. McCombs, wife of C. J. McCombs, wrote to the agent, Kelley, in regard to the same matter, urging immediate action. The rejected evidence also showed that negotiations for the $3,000 policy were carried on and continued down to the 22d of August, 1909, at which time Kelley mailed the $3,000 policy to Mr. C. J. McCombs, or Mrs. Heether, at Marshalltown; that a check was sent to Kelley for the premium, signed by either H. F. McCombs or McCombs Bros., and received about 3:30 p. m. on August 29, 1909. All this evidence was rejected, and errors pred-

icated upon the action of the court in so rejecting, and it is urged that this evidence tended to show a scheme or purpose to defraud, which relates back to the time when the policy in suit was issued, and should have been received.

There is no attempt on the part of the defendant to show that these parties, in soliciting and securing this additional insurance, were acting on the part of Heether, or that they were acting under his direction, or with his knowledge or consent. Indeed, the letters show, and Kelley was informed by the letters that Mrs. Heether did not want her husband to know that she had made such an application. How this testimony could have any tendency to show a scheme or purpose or intent, on the part of Heether, to wrongfully secure the policy in question, or how it tended to show, in the least, that, in, securing the policy involved in this suit, he intentionally practiced a fraud upon the defendant company, is not apparent to us. Nor is it made plain to us by any argument offered in support of appellant's contention.

It is true, as claimed by appellant, that large latitude is allowed in the investigation when there is an issue of fraud, and it is true that acts done before and after the doing of the act charged as constituting fraud may be shown when the subsequent acts tend to show a scheme or purpose, upon the part of the party charged, to commit like or similar fraud. This is only permissible as bearing upon the intent of the party in the doing of the act charged. Before any act, done after the time when the fraudulent act charged was committed, can be shown, it must appear to have been committed with the knowledge or consent, or acquiescence, or at the instance of the party charged with the original fraud, and it must have a tendency to show that, in the doing of the act charged, the person charged with the original fraud had an intent or purpose to defraud the complaining party. That acts done before and after may be shown to establish the intent, or to show a scheme or purpose to defraud, is well supported by the authorities cited by the de-

fendant. See *Starr v. Stevenson*, 91 Iowa, 684; *Hamilton Buggy Co. v. Iowa Buggy Co.*, 88 Iowa, 364.

But it must be the act of the party charged with the commission of the original fraud, done before or subsequent to the act charged, that may be shown to demonstrate the original fraudulent intent. The intent of one party in the doing of an act where fraud is involved cannot be established by showing the doing of a similar act by another party, at another time, in relation to like matter, or even the same matter, where there is no evidence that the original party, charged with the fraud, had any knowledge of, or acquiesced in, the subsequent act. This statement is self-evident and needs no authority to support it. This was practically what the evidence offered tended to show, and could therefore have no tendency to establish any scheme, or purpose, or intent, on the part of Heether, at the time he made the application and received his policy, to defraud the company. All other matters involved in the suit are settled by the verdict of the jury. They were submitted to the jury by the court under instructions to which no exception was taken, and no other point is urged by counsel upon this appeal. As to whether the assured practiced any fraud in obtaining the policy in question was submitted to the jury upon the evidence and the law given to them by the court, and the only complaint is that the court excluded the evidence above offered, and we presume it is the contention of the defendant that, if such evidence had been admitted, a different result would have followed.

But, even if we were to review the evidence upon which the case was submitted to the jury, it does not affirmatively appear therefrom that the assured knowingly misled the medical examiner as to his physical condition or the state of his health. It does not appear that any of the statements made in his application were not made in good faith and in full belief that the statements at that time were true. Indeed, it affirmatively appears that, even

2. Same.

after he had gone to Atlantic City and was there examined and told of his then condition, he refused absolutely to believe it, and it is well said in *Roe v. Insurance Co.*, 137 Iowa, 696, that, "even if the assured were not a fit subject for insurance, this did not prevent the defendant company from promising indemnity upon his death."

The insurance company had its medical examiner to whom he submitted himself for examination, and who, we presume, was competent to determine from
3. SAME.                    such examination what his then physical condition was.   At least the physician should have known as much about it as the applicant.   The examination was made, and upon such examination a favorable report made to the company.   If the physician then discovered a condition in the applicant that rendered him an unfit subject for insurance, and he concealed that fact from the company, such deceit or fraud would not be chargeable to the assured.   The assured can only be charged with such fraud or concealment of his physical condition as was knowingly made by him with intent to defraud the company.

We find no error in the record, and the cause is *Affirmed.*