No. 20,282.

MARGARET FARRAGHER, *Appellee,* v. THE KNIGHTS & LADIES OF SECURITY, *Appellant.*

SYLLABUS BY THE COURT.

1. INSURANCE—*Fraternal—Application—Circumcision—Physician—Consultation—No Intentional Concealment—Company Liable.* In an action to recover upon a beneficiary certificate the defense was that the insured made false and fraudulent representations in his answers to questions asked by defendant's medical examiner, in which deceased stated that he had not consulted or been treated by any physician or surgeon during the previous five years for any illness, disease or injury, and had never undergone any surgical operation. Within a year previous he had been circumcised by a physician, who on later occasions dressed the wound, and who testified that, in his opinion, the insured was in perfect health at the time, and that the circumcision was performed for sanitary purposes. There was proof that the death of the insured resulted from a disease which had no relation to the circumcision, and physicians and surgeons testified that they did not regard circumcision as an operation. Defendant's medical examiner testified that if he had been informed of the fact he might not have considered it serious enough to mention in the application. Upon these facts and others stated in the opinion, the finding of the trial

court that defendant failed to show the intentional suppression of any fact or circumstance which deceased naturally supposed would tend to influence defendant in passing upon his application, and that plaintiff is entitled to recover, will not be disturbed.

2. SAME—*Application—Untruthful Answers—Policy—Absolutely Literal Interpretation Impossible—Bona Fides.* It will not do to place an absolutely literal interpretation on the provisions in an application and policy of life insurance with respect to untruthful answers. There must not be evasion, fraud or suppression of facts; there must be absolute good faith in the conduct of the applicant; but where the evidence shows there has been no evasion, no purpose to conceal any fact which the applicant would naturally suppose was contemplated by the questions, and where the company issuing the policy could not have been prejudiced by the answers, and the death of the insured resulted from causes wholly unrelated to the matter about which the alleged untruthful answers were given, a defense based upon their untruth can not avail.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 8, 1916. Affirmed.

*W. W. Brown,* and *James W. Reid,* both of Parsons, for the appellant.

*John Madden,* and *C. E. Cooper,* both of Parsons, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an action to recover upon a beneficiary certificate issued December 15, 1913, upon the life of James A. Farragher, plaintiff's son. At the time of his death, March 19, 1914, he was a member of the defendant order in good standing. The plaintiff recovered judgment and defendant appeals.

The defense is that in his application for the insurance James A. Farragher made certain representations which were false and fraudulent. To each of the following questions asked of him by the defendant's medical examiner, he answered "No."

"1. Have you ever consulted, or been treated, by any physician or surgeon, within the past five years for any illness, disease or injury? If so, give name and address of each and full particulars.

"2. Have you undergone any surgical operation, or have you any bodily malformation or weakness?"

The evidence shows that on February 21, 1913, James A. Farragher was circumcised by Dr. J. C. Cornell for balinitis, that is an inflammation of the foreskin, indicating the presence of bacteria.  On later days Doctor Cornell dressed the wound caused by the circumcision.  Also, that on November 1, 1913, Farragher, who conducted a grocery and meat market, cut his finger and had Dr. Cornell treat the wound in order to prevent any danger of blood poisoning, although there was no evidence of blood poisoning.  Doctor Cornell testified that the removal of the foreskin does not affect a person's general health, but usually makes it better; that he made an examination of Farragher at the time of the circumcision, and that, aside from this one condition, he regarded Farragher as a perfect specimen of manhood; that there was no evidence of his having then, or previously, any venereal disease.  He further testified that he performed the circumcision at his office; that Farragher came there to have it done and after it was done walked away and was then in perfect health.  In his opinion as a physician and surgeon he did not consider circumcision an operation; that at the time he removed the foreskin there was no diseased condition; that the foreskin was perfectly healthy, and that he performed the operation for sanitary purposes, and that it did not affect Farragher's health.  He also made proof of death, and certified that James Farragher died from acute dilation of the heart, which he testified usually arises from secondary conditions, such as rheumatism, which in his opinion, was the cause of the heart dilation in this instance, and he said that he found no rheumatic conditions at the time of his examination.

Dr. J. C. Creel, one of the witnesses for the defendant, testified that circumcision is a minor operation, and that if performed where there is no infection it is beneficial.  The chief medical director of the defendant company testified that a simple, uncomplicated circumcision, without disease present and no disease necessitating the operation, would not in his opinion be a ground for rejecting an applicant for membership in the order.  Other physicians testified that circumcision is a very common thing, that it improves the condition of a person from a sanitary standpoint.  Doctor Boardman, medical examiner, who examined Farragher at the time the appli-

cation was made, testified that the answers to the questions were in his handwriting; that if he had known or had been told that the applicant had been treated for balinitis, or had been circumcised within the past five years, he might not have considered it serious enough to mention in the application. He further testified as follows:

"I quite frequently explain to the applicant that the company does n't care about every little cold they have had in their head or cinder in their eye or anything minor like that. That they don't care for anything like that. I could n't positively say that I explained that to him, but I quite probably did as I quite generally do that."

Asked to define his understanding of the words "consultation and treatment," in the written application, he testified:

"Well, the way I understand that question is this, the company don't care about knowing every little bit of thing that a man has spoken to a doctor about in the past five years or that passes off in a day or two but that the company don't care about that."

The findings show that the trial court was impressed with the testimony of the examining physician as to his custom and practice to explain to applicants the scope of the inquiry, and was convinced that the defendant had failed to show the intentional suppression of any fact or circumstance which the deceased naturally supposed would tend to influence the defendant in passing upon his application. We think it must be obvious that if experienced physicians and surgeons do not regard circumcision as a surgical operation in the sense in which that term is employed in the questions submitted, and where it is found necessary for sanitary purposes, and where there is no disease, certainly an ordinary layman would naturally look at the matter in the same light. According to the testimony, James A. Farragher was a man in perfectly good health at the time of the circumcision. It was apparent that he did not regard it as an operation within the meaning of the question. He had never been sick or lost any time from his work by reason of it. It was a minor operation, requiring the attention of a doctor on one or two occasions after it was performed, for the purpose of dressing the wound. It was of little more consequence or importance than the dressing of his finger when he was injured by the butcher knife.

The authorities generally recognize that it will not do to

place an absolutely literal interpretation on the provisions in the policy and application with respect to untrue answers. (See *Insurance Co. v. Brubaker*, 78 Kan. 146, 150, 96 Pac. 62.) Of course there must not be evasion, fraud or suppression of material facts. There must be absolutely good faith in the conduct of the applicant. But where the evidence shows there has been no evasion or fraud, no purpose to conceal any fact which the applicant would naturally, under the circumstances, suppose was contemplated by the question; and where as in this case, the company issuing the certificate could not have been prejudiced or injured in any manner by the answer, and the cause of death is wholly unrelated to the matter about which the alleged untruthful answer was given, such defense should not be upheld. Upon the findings of the trial court we deem it unnecessary to enter into a discussion of the authorities on the question of untruthful answers in applications for insurance.

The judgment will be affirmed.