No. 21,373.

MARY E. SHARRER, *Appellee*, v. THE CAPITOL LIFE INSURANCE
COMPANY, OF COLORADO, *Appellant*.

### SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Physical Appearance of Applicant—Testimony of Neighbors.* Testimony of neighbors as to physical appearance of the insured was properly received touching his good faith in making the statements contained in the application.

2. SAME—*Statements in Application—Representations Not Warranties.* The policy provided that the statements made by the insured should, in the absence of fraud, be deemed representations, and not warranties. *Held,* that good faith in making such statements was sufficient, although they may have been incorrect in fact.

3. SAME—*Verdict—Instructions.* The evidence supported the verdict, and there was no error in the giving or refusing of instructions.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion filed March 9, 1918. Affirmed.

*C. W. Burch, B. I. Litowich, LaRue Royce,* all of Salina, and
*William E. Hutton,* of Denver, Colo., for the appellant.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment on a life insurance policy, claiming that the answers of the applicant touching his health relieved the company from liability; that certain testimony was improperly admitted; that certain findings of fact should have been set aside; and that the court erred in charging the jury.

The answers in the application complained of are that he had never had any disease of the stomach, and that to the question, "How often during the past five years did you consult a physician?" the answer was "No." It seems that the applicant had consulted certain doctors about some digestive disturbance, and had had his stomach washed out and received some treatments, and that some months after the policy was issued the trouble developed into a cancer of the stomach or esophagus, from which he died. The agent testified that he

Sharrer v. Insurance Co.

took the examination blank on September 27, 1915, and the policy was issued three days later; that he had known the deceased some two years; that he went to his house to solicit his two boys for life insurance and spoke to the father about insuring him, remaining at the house two or two and a half hours. Later, he called the deceased to come to his office and finally got his application for life insurance, being paid one year's premium in advance by check. He sent the applicant to Dr. Moses, the examiner, and when the policy came the agent went out as quickly as he could and delivered it at the applicant's home and stayed there until after dinner. He did not observe anything unusual about the applicant's eating; he seemed to eat like the rest of the people—took the same kind of food as near as the agent could tell, and was apparently in good health.

The examiner testified that he did all the writing on the application, except the signature.

"Q. After you had written down the answers in this blank, did you read it over to him? A. No, sir.

"Q. You just passed it to him. and asked him to sign it? A. I just passed it to him and says: 'This is what you are to sign,' pointing the place where he is to sign.

"Q. And he signed? A. He signed.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Yes, and you say to all external appearances, at least, or as far as your examination disclosed, he was a healthy man? A. He was a healthy man."

The jury found that the deceased consulted one physician June 28, and July 26, 1915, another about August 25 and September 4, and the former about September 27, but that on September 27, and for two months before, he enjoyed good health, and that two months prior to that date he had no sickness.

"13. Was the insured in sound health and insurable condition at the time of the delivery of the policy of insurance sued upon in this action? A. Yes."

Witnesses were permitted to testify that they had seen the deceased at various times during the summer and fall, one as late as December, and that he looked and acted as usual. This simply corresponds with what the examining physician thought at the time he wrote in the answers to the questions,

and it was competent touching the good faith of the deceased, for if his appearance was such that his neighbors and acquaintances, as well as the examining physician, thought him in usual good health, this would tend to show that the applicant had no reason to believe that he had been or was soon to be stricken with a fatal malady.

It is argued that the truth and not the good faith of the answers is the scale-tipping thing; but it is stated in the plaintiff's brief, and not disputed, that the policy contained the clause that "All statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties." The rule in such cases is that good faith is sufficient. (*Mouler v. American Life Ins. Co.*, 111 U. S. 335; *Insurance Co. v. Woods*, 54 Kan. 663, 39 Pac. 189. See, also, *Farragher v. Knights & Ladies*, 98 Kan. 601, 159 Pac. 3, and *Diehl et al. v. Mut. Life Ins. Co.*, 176 Ill. App. 462.) The recent decision in *American Bankers' Ins. Co. v. Hopkins,* by the supreme court of Oklahoma, 169 Pac. 489, is very much in point.

Section 5290 of the General Statutes of 1915 provides that—

"No misrepresentation . . . shall be deemed material . . . unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

The answer alleged, not only that the applicant when insured was and for many months had been afflicted with cancer of the stomach, but also that all of the representations covering this matter "were false and known to be false by the said David N. Sharrer and were falsely and fraudulently made to the defendant by the said David N. Sharrer for the purpose of inducing the issuance to him" of the policy. The day the examination was made the deceased had had his stomach washed out, and this was repeated two days later, the doctor giving him a prescription. But not until November 1st was an X-ray picture taken, and this revealed what the doctor termed two notches about as big as a half dime. After the death in the following March a post-mortem examination convinced the same physician that cancer caused the death. Two other doctors examined him on September 4 and discussed a case of malignancy or cancerous stomach, but did not conclude

that it was such.  Two of the attending physicians during his last sickness testified that a case of cancer might develop and produce death within three months, and that they were unable to say that any diseased condition existed as early as September.  One of them stated that the condition found at the post · mortem was not necessarily inconsistent with good health the previous September.

From the foregoing, it appears that the jury had fair grounds for finding that the claims of existing cancer and fraudulent statements were not sustained.

The instructions gave the jury correct rules to guide their deliberations.

Mention· is made of a previous rheumatic ailment, but this does not appear to have returned, or to have been a causal element in the case.

The judgment is affirmed.