No. 24,141.

ETHEL MORELAND, *Appellee,* v. THE NATIONAL COUNCIL OF THE SECURITY BENEFIT ASSOCIATION, *Appellant.*

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Oral Evidence as to Manner of Making Application for Certificate Admissible.* Oral testimony as to the manner of making out an application for a beneficiary certificate in a fraternal association is admissible.

2. SAME. The defense to an action on a fraternal beneficiary certificate was that the deceased in his application for membership gave a negative answer to the following question: "Have you been under the care of or consulted a physician or surgeon concerning yourself within five years? If so, what ailment, name and address of each physician and surgeon and give dates." It was conceded that the answer as it appeared was false and that the assured had consulted and had been under the care of two physicians shortly before his application was made. Over defendant's objections, two members of the order whose applications were being taken at the same time and who sat near the deceased, testified that they heard some of the questions asked the deceased and did not hear this particular question asked of him, and did not think it was read over to him before he signed the application. *Held,* that the evidence was admissible.

3. SAME. Over defendant's objections, the same witnesses were asked whether

—————————————————————————————————————————
Moreland v. Security Benefit Association.
—————————————————————————————————————————

similar questions were read to them when they made out their applications, to which they answered, "No." *Held,* the evidence was admissible for the purpose of throwing whatever light it might cast upon the manner in which the application of, the deceased was prepared and signed, the weight to be given to the evidence being for the jury to determine.

Appeal from Cherokee district court; FRANK W. Boss, judge. Opinion filed January 6, 1923. Affirmed.

*S. C. Westcott,* of Galena, and *James P. Mead,* of Joplin, Mo., for the appellant.

*V. J. Bowersock,* of Baxter Springs, and *E. B. Morgan,* of Galena, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Ace Moreland became a member of the defendant, a fraternal beneficiary association, on February 12, 1919, and died April 24, 1920. He held a benefit certificate payable to his wife. In this action she recovered judgment for the face of the certificate, and defendant appeals.

The answer alleged that the contract contained a condition that if the answers in the application for membership and medical examination should not be true in each and every part, the certificate should be void, and that the certificate was issued in consideration of the warranties and agreements made by the assured. It was alleged that the applicant was asked this question: "Have you been under the care of or consulted a physician or surgeon concerning yourself within five years? If so, what ailment, name and address of each physician and surgeon and give dates. Ans. No." It was alleged that the answer was false; that the assured consulted and was under the care of two physicians during the months of October and November, 1918. The application contained the following:

"I further declare and agree, that I have verified each of the foregoing answers and statements from 1 to 36, inclusive, and that I know and understand the contents thereof and that the answers and statements as written herein are as given by me."

And the further stipulation—

"That the application for membership by the said Ace Moreland together with the report of the medical examiner were true in all respects, and each and every part thereof held to be a strict warranty and to form the only basis of the liability of the order to said member, or to said member's beneficiaries, the same as if fully set forth in the certificate issued thereunder."

The reply alleged that Ace Moreland never directly or indirectly

gave the answers, statements or representations and warranties alleged to have been made by him, and did not authorize anyone to give or make such answers; but that W. T. Walker, district manager of defendant, and Dr. W. M. Dolan filled out the application blank and wrote the answers to the questions and directed Ace Moreland to sign; that the application was not read to him after being filled out, and he had no opportunity to read it, and that the answers to the questions were unknown to him.

That the deceased had two physicians in attendance when he was "recovering from the flu" was testified to by his wife and by the physicians. It appears that there was a special drive for membership in the defendant association in January, 1919, and that on a certain Sunday several applicants were being examined at the drug store in the town of Hockerville, just over the line in Oklahoma. Eighteen or twenty applications were filled out that same day. W. T. Walker was district deputy of the order, and Dr. Dolan was the physician who made the medical examinations. The plaintiff took the deposition of one Ed Endicott, who testified that he was one of the applicants. He was asked to state whether at the time the application of Ace Moreland was being written, Moreland was asked the question: "Have you been under the care of or consulted any physician or surgeon concerning yourself within five years?" Over defendant's objections, the witness answered, "Well, I don't remember his saying anything like that to Ace." The same witness testified, "I overheard quite a few of the questions that were asked Mr. Moreland by Mr. Walker, but I don't remember now just exactly what he did ask; quite a few of them."

Plaintiff called as a witness Martha Kelly, who testified: "he was working on Mr. Moreland's application when I arrived. I took a seat near Mr. Moreland. Mr. Walker was questioning him. I didn't listen to all the questions. I was just sitting there; I was listening too, but not to every bit of it. I didn't pay any attention to all of it; not able to remember all the questions that were asked." After being asked whether or not she heard certain other questions (not important in this appeal) asked of Mr. Moreland, which she answered in the negative, she further testified:

"Q. I will ask you whether or not you heard the following question read over, and whether or not you heard any answer to it. 'Have you now or have you ever had any disease of the following named organs; or any of the following named diseases? If yes, then give name of disease, date, duration, re-

covery complete or incomplete, name and address of physician in blanks below.' Did you hear that question read to Mr. Moreland? A. No, sir.

"Q. I will ask you whether or not you heard this language read over to Mr. Moreland, by anyone: 'I further declare and agree that I have verified each of the foregoing answers and statements from 1 to 36, inclusive, and that I know and understand the contents thereof, and the answers and statements as written herein are as given by me.' Did you hear that read over by anybody to him?

"A. No, sir. I did not see Mr. Moreland sign the application or what was done after the answers were written, to the time for signing. I do not know whether Mr. Moreland took it and read it over; my back was to him. I do not think the questions propounded to which answers were given were again read over to Mr. Moreland. After the writing was done, it was not reread. I did not overhear other examinations made by the same men there. I made application there that day; my application was made out."

Over the objections of the defendant both these witnesses were asked whether Walker read over to them "all of these questions I have read to you here when making out your application." The witnesses answered, "No."

Miss Kelly said she did not remember that the clause at the end of the blank declaring that she agreed and verified each of the foregoing answers and statements was read to her. She said: "He just handed me the paper and pen and I signed my name and left the drug store. Mr. Walker showed me where to sign my name."

The testimony of these witnesses was opposed to the positive testimony of Walker who prepared Moreland's application. The contention is that all this testimony was incompetent and that none of it should have been admitted. It has been held, however, that oral testimony as to the manner of making out applications for insurance may be admitted. (*Continental Ins. Co. v. Pearce*, 39 Kan. 396, 18 Pac. 291; *Broady v. Fire Association*, 94 Kan. 245, 248, 146 Pac. 343.)

The court instructed the jury that this testimony was admitted for the purpose of throwing whatever light it might cast upon the manner in which Moreland's application was written out and signed, and for no other purpose, and that the weight, if any, was for the jury to determine.

In respect to representations as to past sickness, it has been said that "The truthfulness of the answers to material questions, being a part of the warranty, was essential to the validity of the contract" (*Glasgow v. Woodmen of the World*, 107 Kan. 354, 357, 191 Pac. 470), and in the same case that "The jury had no right to

disregard credible testimony merely because the plaintiff testified that she had no knowledge of such consultation and treatment. Negative testimony of that character is entitled to little, if any, weight." (p. 359.)

In *Hiatt v. Woodmen of the World,* 107 Kan. 359, 191 Pac. 472, a witness who was present at the medical examination of the assured, testified that no more than 10 minutes was occupied in the examination; and in answer to a direct question said that the doctor did not explain to the assured the meaning of the terms used; and in substance, testified that he did not hear assured asked a certain question. It was held that the testimony was negative in character and not sufficient to overcome the written application and the positive testimony of the physician who made the examination. It was further held that the false answers in the application annulled the certificate.

We think it cannot be held that this testimony as to the manner in which Ace Moreland signed the application and what was said to him was not admissible. The court properly instructed the jury as to the purpose for which it was admitted.

It is contended, however, that it was error to admit testimony of the other applicants as to the manner in which their medical examination and applications were taken. The witness Endicott testified that not more than 25 or 30 minutes was required to take the applications and the medical examinations of Moreland and himself. The fact that there were a large number of applicant's being examined during the period from about noon until 3 o'clock in the afternoon was a circumstance which the jury would have a right to consider; and for the same reason we think, that, in view of the circumstances under which Mr. Moreland's application and examination was taken, it was not error to permit the witnesses to testify to what occurred when they were examined. It is true that some of their testimony was purely negative in character, but Miss Kelly testified with some positiveness that she did not hear and did not believe that this particular question upon which the defense is based was asked of Moreland or read over to him before he signed the application.

The judgment is affirmend.

Porter, J. (dissenting): While it is well known that fraternal beneficiary associations, in their anxiety to increase their member-

ship, are very lax in medical examinations of applicants, still I think it would establish a dangerous precedent to affirm this judgment and permit negative testimony of this character to overturn the express warranties in the written application for insurance.