No. 25,264.

SAMUEL H. BLADES, OPAL J. BLADES, an infant, by SAMUEL H. BLADES, her next friend, and SAMUEL H. BLADES, as Administrator, etc., *Appellees*, v. THE FARMERS AND BANKERS LIFE INSURANCE COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Incorrect Statements Made in Application—Application Prepared by Insurance Agent—Oral Evidence Admissible to Show Questions Actually Asked and Answers Returned.* In an action on an insurance policy where it is contended that the representations purported to have been made by the insured in an application for insurance prepared by a representative of the insurance company did not correctly state the questions asked and answers made by the applicant, oral evidence is admissible to show the questions actually asked and the answers given.

2. SAME—*Distinction between Representations and Warranties in Application.* Statements in an application for insurance are not to be construed as warranties unless made so by express agreement in clear and unequivocal language, and *held,* the statements in question were representations and not warranties.

3. SAME—*Incorrect Representation Made by Insured in Good Faith, Believing Them to Be True, Will Not Avoid the Policy.* Representations of an insured that she was not pregnant made in good faith, believing that she was not in that condition, will not avoid the policy although it turned out that she was in fact pregnant when the application was made, if the applicant in good faith believed her answers to be true.

4. SAME—*Evidence Sustains Findings and Verdict.* The evidence examined and held to be sufficient to sustain the findings and verdict of the jury.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed May 10, 1924. Affirmed.

*Z. C. Millikin,* of Salina, and *J. A. Brubacher,* of Wichita, for the appellant.

*F. D. Boyce,* of Minneapolis, and *E. G. Smith,* of Washington, D. C., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover upon a life insurance policy. The verdict and judgment was in favor of the plaintiff and defendant appeals.

On June 3, 1921, Mrs. Sadie M. Blades, a married woman, was solicited to take out a policy of insurance in the Farmers and Bankers Life Insurance Company. She signed an application for

a policy in the amount of $2,000 payable to her estate. Her husband took out a policy on his life at the same time and both went to the office of the medical examiner on June 11, 1921, where the examination was made. On June 29, 1921, the medical examiner visited the Blades' home and required her to fill out an additional blank which it is said was required where the applicant was a married woman, whereupon he interrogated her and wrote down the answers for her. It appears she was taken to a hospital on October 13, 1921, where she underwent a surgical operation known as a Cæsarean operation, when a dead child was removed from her body. At the end of about three weeks she appeared to have recovered from the operation and was returned to her home, but on November 7, 1921, she was taken suddenly ill and died about three hours later. The attending doctor gave embolism as the cause of her death. The plaintiff asked for a recovery upon the policy which was alleged to have been in full force and effect when she died.

In answer to plaintiffs' petition, the defendant alleged that in the application of the insured she represented that she was not pregnant, whereas she had been pregnant for about three months prior to the time the application was signed. In the medical examination she was asked the question: "How long is it since you have consulted or have had the care of a physician?" and the answer written was, "None since confinement." The confinement referred to occurred about two years before the application for insurance was made. Testimony was offered that this was not the question asked by the medical examiner, but that the question asked was: "If she had had a doctor for anything serious since the last child was born?" and she answered "No." The defendant with its answer filed a cross-petition asking for the cancellation of the policy because of untrue answers given in the preliminary medical examination. The case was submitted to a jury which found as to the time when she consulted or had had the care of a physician that she had talked to a physician about her condition on May 30, 1921, when she told the doctor that she had missed a menstrual period but was menstruating on that day and wondered if she could be pregnant, and that the doctor who made no examination told her to rest and await developments and that if pregnant she would probably be confined about November of that year.

There was a finding that she was pregnant on June 3, 1921, but

that she did not know that she was pregnant when she made her application for insurance and did not knowingly and falsely misrepresent her condition of pregnancy for the purpose of defrauding the insurance company. It was also found that she did not believe or have cause or reason to believe that she was or might then be pregnant, and did not have reason to believe so until she felt motion.

There was a further finding that when the policy was applied for and issued the company did not knowingly insure the life of pregnant women.

After finding as to the death and its cause the jury further found that they did not know whether the condition of pregnancy or the operation contributed to the result that caused her death, and did not know that phlebitis following the operation to deliver the child and producing embolism caused her death, but that her death was caused by embolism.

On the request of the defendant the court made findings of fact of its own on the cancellation branch of the case which mainly corresponded with those made by the jury. The court found that when the original application reached the home office of the defendant and the examination disclosed that the applicant was a married woman, a special blank to be filled in was sent to the local medical examiner with instructions to have the questions therein answered and signed as a part of the application. It was found that at the time the application was signed the insurance company did not knowingly insure the lives of pregnant women, and that over the signature of the applicant was a declaration that the statements and answers were true, full and complete, whether written by her own hand or not, and that they were offered as a part of the application for insurance. There was a recitation that the court had admitted over objection the form of the question asked by the medical examiner, to wit: "If she had had a doctor for anything serious since the last child was born?" and the answer "no," given by Mrs. Blades.

There was a further finding that if the application had shown that the applicant was pregnant or if from representations made by her in the application, the defendant had had any reason for believing that she was pregnant or she had consulted a doctor to ascertain if she was pregnant, the policy would not have been issued. The conclusion of the court was that defendant was not entitled to a cancellation of the policy.

The findings of the jury were approved by the court and judgment entered upon the verdict. There is no objection to the findings of fact by the court, but its conclusion is challenged.

The first assignment of error is the admission in evidence of oral testimony as to the question asked and answered in relation to the time the insured had consulted a physician. The application was prepared by the medical examiner of the company, he asking the questions and writing down the answers of the insured. As already shown the question was: "How long is it since you consulted or have had the care of a physician?" The answer written was: "None, since confinement." According to the testimony the question asked was: "If she had had a doctor for anything serious since her last child was born?" and that the answer was "no." She had talked with a physician shortly before the policy was issued as already related. If her interview with the doctor may be regarded as a consultation and the question and answer material in the case, still the evidence cannot be held to be incompetent. The defendant alleged that the question was asked in the form stated and was answered untruthfully. The plaintiff denied the averment and specifically alleged that the insured had never said or answered that she had not consulted a physician. It was the duty of the representative of the company who prepared the application and contract to write correctly the questions and answers as they were propounded and given. The insured had a right to rely upon the assumption that the answers made by her were correctly written, and where it is not done, it is competent for the plaintiff to show what representations were actually made. In a case where a question arose as to the admission of oral evidence as to representations made by the insured when the application was prepared, it being contended that it would overthrow a written contract, it is said: "This court has decided numerous times that such evidence is admissible." (*Broady v. Fire Association,* 94 Kan. 245, 146 Pac. 343). Some of the cases recognizing that such evidence is admissible and has been considered are: *Insurance Co. v. Bank,* 60 Kan. 630, 57 Pac. 524; *Insurance Co. v. Darrin,* 80 Kan. 578, 103 Pac. 87; *Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245; *Farragher v. Knights and Ladies,* 98 Kan. 601, 159 Pac. 3; *Mercantile Co. v. Insurance Co.,* 101 Kan. 522, 168 Pac. 323; *Moreland v. Security Benefit Association,* 112 Kan. 587, 212 Pac. 93.

The principal contention is that the negative answer given to the

question: "Are you pregnant?" and the instructions relating to the subject require a reversal of the judgment. It is insisted that the fact of pregnancy was one peculiarly within the knowledge of the insured and as she was in fact in that condition her answer was untrue and operated to annul the policy. It may be noted that there is no express provision that the answers or statements made by the insured in her application for insurance are to be regarded as warranties. It was recited in the application which she signed that each of the statements and answers made by her were true, full and complete and that she offered them as a part of her application for insurance. Should the statements made be treated as warranties or mere representations? In *Insurance Co. v. Woods,* 54 Kan. 663, 39 Pac. 189, there was a contention that incorrect answers made to questions as to the physical condition of the insured and as to consultations with physicians, where it appeared that the policy contained a provision that if any statement made in the application should be found to be incorrect, the policy would be void. It was held that the statements in the application for a policy which if untrue would avoid the policy, should not be construed as warranties, unless the provisions of the application and policy left no room for any other construction and it was concluded that the statements in question should not be treated as warranties. The general rule is that forfeitures are not favored, and that provisions and obligations of an insurance contract should be construed liberally in favor of the insured and that only the clearest and most unequivocal language of the contract should be construed as a warranty. The supreme court of the United States held there was no warranty in a case wherein the questions were whether statements made in the application that the insured had not been afflicted with certain diseases, and there was a claim that untruthful answers given would relieve the insurer from liability. The policy contained a provision that the insured declared and warranted that the above were fair and true answers to the question asked, and it was held that the statements made by the insured were not warranties. The trial court had instructed the jury to the effect that untrue answers would avoid the policy regardless of the knowledge and good faith of the insured. The court said:

"It was an erroneous construction of the contract to hold, as the court below did, that the company was relieved from liability if it appeared that the insured was, in fact, afflicted with the diseases, or any of them, mentioned in the

charge of the court. The jury should have been instructed, so far as the matters here under examination are concerned, that the plaintiff was not precluded from recovering on the policy, unless it appeared from all the circumstances, including the nature of the diseases with which the insured was alleged to have been afflicted, that he knew, or had reason to believe, at the time of his application, that he was or had been so afflicted." (*Moulor v. American Life Insurance Co.*, 111 U. S. 335, 346.)

See, also, *Farragher v. Knights and Ladies*, supra; *Sharrer v. Insurance Co.*, 102 Kan. 650, 171 Pac. 622; *Suravitz v. Prudential Insurance Co.*, 244 Pa. St. 582; *Pelican v. Mutual Life Insurance Co.*, 44 Mont. 277; *Cunningham v. Modern Brotherhood of America*, 96 Neb. 827; *McCombs v. Insurance Co.*, 159 Ia. 435; *Royal Neighbors of America v. Wallace*, 73 Neb. 409; Note in 11 L. R. A., n. s., 981; Note in L. R. A. 1915 A. 273. From the authorities it appears that the statements of the insured cannot be regarded as more than representations, and as to the one in question cannot be regarded as other than an expression of opinion or judgment. Of course good faith on the part of the insured was essential, and if there was intentional suppression of material facts, no recovery could be had. On the other hand it has been held that if the opinion expressed is:

"made in good faith, believing that she was not in such condition, even if such answer was not true, it would not avoid the policy or the liability of the company if the applicant in good faith believed her answer to be true." (*Donahue. v. Mutual Life Ins. Co.*, 37 N. D. 203, 218.)

It has also been said that:

"An incorrect or untrue answer in an application for life insurance in reference to matters of opinion or judgment will not avoid the policy if made in good faith and without intention to deceive." (*Royal Neighbors of America v. Wallace*, supra, syl. ¶ 1.)

The instructions of which complaint is made were in line with the authorities cited to the effect that the burden was upon the defendant to show that the representations made were in fact untrue and falsely made, and that if the insured did not know or believe that she was pregnant when she made her application, the fact that she was in that condition would not avoid the policy nor defeat a recovery unless it was found that the death of the insured resulted from her pregnant condition. We think the defendant had no reason to complain of the instructions given.

It became a question in the case therefore for the jury to determine whether the insured answered the questions honestly and in good faith when she made her application or whether she knowingly

and willfully misrepresented her condition as to pregnancy. The jury has' found that she did not know that she was pregnant when the application was made, and further that she did not knowingly or falsely misrepresent her condition of pregnancy for the purpose of defrauding the insurance company. The insured did talk with Doctor Viers in May, 1921, about her condition, telling the doctor that she had passed a period of menstruation, but was menstruating a little on that day. She wondered whether she might be pregnant, and she was told by the doctor to rest and await developments. There was other testimony that there was no cessation of the menses in the months of March, April and May of 1921, and that she was menstruating as late as August 1, and that no motion or quickening was discovered until about the first part of August. The representation as to pregnancy was made on June 29, 1921. A physician who had considerable experience in such cases testified that there is no way of knowing whether or not a woman is pregnant before quickening, except doubtful symptoms. The doubtful symptoms he testified were cessation of the menses, morning sickness, and enlargement of the abdomen, but that the only positive sign was fœtal heart beat. Another physician testified that as a rule menstruation ceased when conception takes place, but that a woman may menstruate down until the time of confinement, and added that all women do not experience a quickening motion, that it is generally thought that a woman is not pregnant when she is menstruating, and that the return of her menstrual period might have indicated to the insured that she was not pregnant. Where it had been claimed that the insured woman had concealed her condition of pregnancy, and that the insurance company had relied on her statement that she was not in that condition, it was said:

"Now, from the fact that a fully developed child was born to the deceased about six months after the examination, it is clearly established that she was about three months pregnant when the examination was made, so that the material question is whether, or not she fraudulently and knowingly misrepresented her condition. The testimony of the medical experts in this case shows that before the quickening period pregnancy cannot be detected from general symptoms, and that the quickening period ordinarily occurs during the fourth and fifth month of pregnancy. Consequently, the evidence. is very slight that tends to show that the deceased knew of her pregnancy on the 18th day of October, 1902, but it is much stronger on the probability of her having knowledge of such fact on the 1st of December following, for that date was probably, under the testimony, within the quickening period." (Merriman v. Grand Lodge Degree of Honor, 77 Neb. 544, 547.)

The statement of the insured was at most an expression of opinion and there was room for the inference that she was honest in the answers given and had no intention to deceive the insurance company. Her good faith was a fair question for the jury.

It being determined that there was no bad faith or intent to deceive in the representations made, the question as to whether pregnancy contributed to the death of the insured is of less importance. The testimony of the physicians and the finding was that embolism was the cause of her death. After the operation phlebitis, commonly called milk-leg, developed, and the expert witnesses stated that phlebitis sometimes follows a Cæsarean operation. It is described as an inflammation of the veins and that a clot or some product of inflammation when carried into the blood stream, and lodging in a vessel which supplies the heart, ordinarily causes embolism and sudden death. While there is testimony that pregnancy may produce phlebitis or that it may be caused by a surgical operation, it was also stated that it might be caused by bruises or contusions on the outside of the body, also by varicose veins. The doctor who was present when the insured died diagnosed the case as death resulting from phlebitis causing an embolism, but he stated that phlebitis occurs many times when there is no pregnancy or childbirth, and with men as well as with women, and further that he did not know what had caused the phlebitis. Another of the physicians said that death might have been due to pregnancy, but that it might be attributed to other causes, and that she was unable to say what was the cause in this instance. She likened it to nephritis which she said might occur in pregnancy, but might result from other causes. In *Nardinger v. Ladies of the Macabees*, 138 Minn. 16, where there was an exception from liability from pregnancy or childbirth, a seven months' child was removed from the insured by a process called forcible delivery. It appears that she was afflicted with nephritis when she died, and the question arose whether the nephritis resulted from a complication arising from pregnancy. In upholding a verdict for the plaintiff it was said:

"In considering this question, we may accept the fact, testified to by defendant's experts, that nephritis is one of the frequent complications attending pregnancy; that in a general way nephritis is caused by the presence of poison in the system; that this poison may come from without, or it may arise within the body, and that pregnancy is sometimes responsible for its presence. On the other hand Doctor Boehm, plaintiff's expert, testified that

'pregnancy alone' does not cause nephritis. Probably there should not be any serious quarrel over this proposition. Doctor Beebe, defendant's expert, testified that healthy women do not have disease with pregnancy. This, in connection with the balance of his testimony, we take to mean that while the poison that causes nephritis may be produced by the pregnancy, it is not so produced where all organs of the body perform to the full their normal functions. If the testimony of any of defendant's experts would lead to any other conclusion, the jury were not obliged to follow it. But these matters are collateral to the issue. The testimony is uncontroverted that nephritis may result from a variety of causes and that nephritis may occur during pregnancy from causes entirely independent of it. The question was asked of medical witnesses on both sides whether, in their opinion, the nephritis of which Mrs. Nardinger died, was caused by pregnancy. Defendant's witnesses answered, 'yes;' plaintiff's witnesses answered, 'no.' The facts are such that the jury might well have found for the defendant on this issue, but we cannot ignore the testimony of plaintiff's witnesses, and, in view of the fact that the burden of proof rests on the defendant as to this proposition, we feel bound to hold that the verdict of the jury has sufficient evidence to sustain it." (p. 19.)

For like reasons it must be said that the evidence is sufficient to sustain the verdict of the jury on this as well as the other questions involved in the case.

Finding no substantial error, the judgment is affirmed.