No. 32,748

ALIDA DAY, *Appellee*, v. THE NATIONAL RESERVE LIFE INSURANCE COMPANY, *Appellant*.

(62 P. 2d 925)

Opinion filed December 12, 1936.

*Roscoe Graves,* of Emporia, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellant.

*I. T. Richardson,* of Emporia, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to collect on a life insurance policy. Judgment was for plaintiff. Defendant appeals.

On.July 1, 1933, insured applied for a life insurance policy. He filled in and executed part 1 of his application. In this he stated that the statements and answers contained in it were full, complete and true, and should constitute his application for insurance, and that there should be no contract of insurance until a policy should have been delivered and the first premium paid during applicant's lifetime and continued good health.

On August 24, 1933, he executed part 2 of his application. That document contained many questions and answers, among which were the following:

"7C. Have you ever suffered from any ailment or disease of stomach, intestines, liver, kidneys, bladder? A. No.

"8E. Have you consulted or been treated by any physician for any ailment or disease not included in your above answers? A. No.

"10. Are you now in good health, free from diseases and injury? A. Yes."

Parts 1 and 2 of the application were made a part of the policy. Two paragraphs of the policy issued are as follows:

"Contract. 10. This policy, and the application herefor constitute the entire contract between the parties hereto. All statements made by the insured as the basis for the contract shall, in the absence of fraud, be deemed representations and not warranties, and no such statements shall avoid this policy or be used in the original application herefor, and unless a copy of the application be endorsed hereon or attached hereto when this policy is issued."

"Agreements. 19. All agreements made by the company are signed by its president, vice-president, secretary, assistant secretary, treasurer or assistant treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for payment of a premium or interest, or make any agreement which shall be binding upon the company."

·The policy was issued to insured on August 29, 1933. On May 18, 1934, insured died.

When proof of loss was made the company refused payment. The petition was the simple statement of the issuance of the policy, the death of insured and the refusal of the company to pay.

In the answer the defendant admitted the issuance of the policy and the death of the insured. The answer then alleged that the

policy was procured by the insured through certain false statements and representations made by him in his written application for the policy. The following questions and answers were set out in the answer:

"8E. Have you consulted or been treated by any physician for any ailment or disease not included in your above answers? A. No.

"10. Are you now in good health, free from diseases and injury? A. Yes."

The answer alleged that insured knew the above answers to be false and that they were made for the purpose of inducing the company to issue the policy. The answer alleged that when insured executed part 1 of the application he warranted that he was in good health. The agreement to which the answer referred was as follows:

"I hereby declare and agree: 1. That the foregoing statements, together with the declaration and my statements and answers, and also those made in part 2 hereto, if required, shall constitute my application for insurance on application. The statements and answers are full, complete and true, and are offered by me as the basis for the proposed contract for insurance.

"2. That except as otherwise stated in the form of receipt hereto attached, there shall be no contract of insurance until a policy shall have been issued and delivered to me and the first premium paid thereon during applicant's lifetime and continued good health, and that such delivery and payments shall constitute acceptance of the policy as issued.

"3. I hereby certify that I have examined and accept the provisions of the policy applied for, and said company shall not be held responsible for agent's statements at variance therewith. That my acceptance of any policy issued on this application, whether or not upon the form applied for herein, will constitute a ratification by me of any change in the form of the policy, or correction in or addition to the application, made by the company in the space headed, 'For home office additions or corrections,' copy of which constitutes sufficient notice to me of the change made."

The answer alleged that the defendant was not liable to plaintiff in any amount except for the amount of the premium paid and this was paid into court.

The reply of plaintiff denied that insured knowingly or fraudulently made any statement, for the purpose of securing the policy, that was untrue, but that all of his statements were true and that insured was in good health and believed himself so.

With the issues thus made up the case was submitted to a jury. A verdict was returned in favor of plaintiff. Judgment was entered accordingly. This appeal followed.

The position of the defendant is that the evidence showed beyond question that insured was examined and treated by a doctor prior to

his execution of part 2 of the application and when he denied this treatment in his application he was guilty of fraud. Defendant argues that the questions were material and that had the company known the true facts it would not have issued the policy.

The position of plaintiff is that when insured made the statements contained in his application he did not know that his health was seriously impaired and the statements made by him were made in good faith and believed by him to be true and he did not knowingly commit any fraud.

Since the parties make the above contentions it will be necessary to examine the evidence.

One doctor testified that insured had consulted him on August 7, 1933. The doctor testified that insured had stated that he was troubled more or less with discomfort and pain in the bowels, and that insured stated he had been so troubled for some time. · This doctor testified that he again examined insured on August 8; and on this occasion he examined insured with a proctoscope and had him X-rayed. At that time he discovered that insured had an ulcerated condition of the colon. He treated insured on that occasion with topical applications to the ulcerous area. Insured did not stay in the hospital but was discharged that day. The doctor testified that he urged insured to remain in the hospital for treatment, but he could not stay on account of his work.

An employee of the defendant testified that it was his work to examine the application for insurance, and that when an application was received wherein it appeared that the applicant had made a false statement the application was rejected.

The plaintiff testified that she was the wife of the insured; that from 1931 to 1934 he did every kind of work there was to do on the farm; that he never made any serious complaint; that he spoke of constipation mostly. She testified that at the time about which the doctor testified insured was doing his regular work on the farm; that on the day of the X-ray examination in the morning insured was at his regular work in the afternoon.

On cross-examination she testified that as far back as 1930 or 1931 insured complained about constipation and took a laxative from time to time; that during that time insured had not called a doctor or visited one, but had taken medicine that they had in the house; that when the whole family had the flu they did not call the doctor, but some of the family dropped in to see the doctor when

they happened to be in town; that insured never went to bed with his constipation.

She testified that when insured called on the doctor on August 7 he told the doctor he was troubled with constipation; that she did not hear the conversation between insured and the doctor at the time the examination was made; that insured took a laxative that the doctor gave him.

Two sons of insured testified to about the same effect.

The jury answered special questions as follows:

"1. Do you find that Charles Day, the insured, prior to August 24, 1933, the date of the medical examination, consulted with Dr. Clyde Wilson as to his physical condition? A. Yes.

"2. If you answer the above in the affirmative, then state whether or not he was advised by Doctor Wilson that he did have any ailment or disease of such character and seriousness, which affected the soundness of his system, or substantially impaired his health, or materially weakened his vigor, or seriously deranged his vital functions. A. No.

"3. If your answer to the above be 'no,' then state whether or not Charles Day, the insured, was advised by Doctor Wilson, and understood from the advice of Doctor Wilson, that although he complained, he had, in fact, only an ailment or disease temporary in character and slight and trivial in its nature. A. Yes."

There was no question about the answer to the first question being correct. We have concluded that there was sufficient evidence on both sides to warrant the submission of the last two questions to the jury.

The defendant argues first that the answer to the first question by the jury is such that judgment should have been given for defendant. The argument is that when insured answered question 7C and question 8E in the negative, and the jury found that he had as a matter of fact consulted a doctor as to his physical condition, then insured was found to have made a misrepresentation as to a material fact, and recovery under the policy was barred.

Here a statement as to question 7C must be made. When the answer of defendant was filed specific reference to questions 8E and 10 was made. It was alleged that the negative answers to these questions constituted fraud and misrepresentation. On the morning when the case was called for trial defendant asked permission to amend its answer by interlineation so as to include a reference to 7C. This request was denied by the trial court. Later, at the conclusion of the evidence, defendant asked permission to amend the answer to conform to the proof. This motion was denied. Defend-

ant argues that the denial of these requests was error. The trial court has wide discretion in permitting amendments to pleadings just as a case is going to trial and in permitting amendments to conform to the proof. Whether that discretion was abused in this instance it is not necessary for us to say, however, since the record discloses that, this ruling of the trial court was not one of the assignments of error. Furthermore, the record discloses that the evidence with reference to question 7C was submitted to the jury, so that it does not appear that defendant was prejudiced by the refusal to permit the amendment.

It should be noted that the contract of insurance provided that in the absence of fraud the statements contained in the application should be deemed representations and not warranties. Since this is true, if the insured actually believed that the trouble about which he consulted the doctor was of a trivial nature and not a disease that was apt to shorten his life, then it was not fraud for him to make negative answers to the questions.

Question 7C asked whether insured had ever suffered from a disease of the stomach, intestines, liver, kidneys or bladder. There was ample evidence that what deceased thought he was suffering from at the time he consulted the doctor was chronic constipation. This court cannot say that every person who is troubled with constipation is suffering with a disease of the intestines. The trouble might be such as to yield to a change in diet. There was evidence from which the jury was justified in finding that the doctor told insured that he had an ailment temporary in character and slight and trivial in its nature.

In *Insurance Co. v. Woods*, 54 Kan. 663, 39 Pac. 189, this court considered a case where an applicant for insurance, in answer to the questions "How long since you consulted any physician? For what disease? Give name and residence of such physician," answered, "Three years ago; typhoid fever; good recovery, Doctor Batinff, Ashtabula, Ohio."

There was evidence that about two years before the application insured had consulted another physician for a catarrhal condition of the throat. The insurance company argued that the answers to the questions in the application were warranties and that since this answer was false the policy was void. This court held that the answers were not warranties but representations. This court held:

"While, in the application for the policy in this case, it is declared that all

the statements written on the application are warranted to be true, inasmuch as the policy refers to the answers to the questions contained in the application as statements, and not as warranties, the court will construe them merely as statements, and, therefore, holds that the insured was bound only to the exercise of good faith, and to answer truthfully as to all matters within his knowledge, and an omission to state a fact which he honestly deemed immaterial will not vitiate the policy." (Syl. ¶ 2.)

In the case of *Sharrer v. Insurance Co.*, 102 Kan. 650, 171 Pac. 622, the applicant was asked in his application how often during the past five years he had consulted a doctor. He answered "No." It appeared from the record that he had consulted a doctor and had his stomach washed out a short time before he made his application. This court held that the statements in the application were not warranties, and that good faith in making the statements was sufficient even though they may have been incorrect in fact.

To the same effect is the holding of this court in the case of *Blades v. Insurance Co.*, 116 Kan. 120, 225 Pac. 1082. In this case the question of whether the insured acted in good faith when he answered question 7C in the negative was a proper one to be submitted to the jury, and there was evidence to sustain the conclusion the jury reached.

This leads us to a consideration of the effect of the negative answer to question 8E. In this answer applicant stated that he had not consulted or been treated by any physician for any ailment not included in the answers to other questions. The record discloses that this answer was literally true. If the matter about which insured consulted a doctor was a disease it was of the bowels. Hence applicant was correct in his answer. Defendant cites some authorities which hold that where an applicant was asked whether he had consulted a physician and answered in the negative, when as a matter of fact he had consulted a physician, that this vitiated the policy. These authorities are not in point here because the question in this case was not whether insured had consulted a physician, but whether he had consulted a physician for certain diseases. The way was left open for an exercise of the good faith and the judgment of the insured.

Other errors that are urged by defendant have been examined and are held to be without merit.

The judgment of the trial court is affirmed.