No. 34,991

FLORENCE E. DARLING, *Appellee*, v. UNITED BENEFIT LIFE INSURANCE COMPANY, *Appellant*.

(109 P. 2d 78)

Opin-
ion filed January 25, 1941.

*P. E. Nulton* and *R. L. Letton*, both of Pittsburg, for the appellant.

*Harry Warren, Douglas Hudson* and *Howard Hudson*, all of Fort Scott, for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellee was the beneficiary under a life insurance policy which had been reinstated after having lapsed for nonpayment of a premium. Upon the death of the insured the company refused payment on the ground of material misrepresentation by the insured in his application for reinstatement. Action to enforce payment was brought, the plaintiff prevailed, and the defendant company appeals.

The question here is whether there was substantial, competent evidence to support the finding of the trial court that the insured acted in good faith in the representations made in his application for reinstatement.

On March 3, 1936, appellant issued to Ira C. Darling of Ft. Scott, Kan., a life insurance policy in the sum of $1,000, Florence E. Darling, mother of the insured, being named as beneficiary. The initial and the second quarterly premiums were paid, but the premium due on September 3 was not paid and the policy lapsed at the expiration of the grace period of thirty-one days on October 4, 1936. On November 17, 1936, Darling signed an application for reinstatement which reads as follows:

"I hereby certify that I am to the best of my knowledge and belief in good health and free from injury and have had no illness or injury since the premium became due (September 3, 1936), except as follows: None.

"I hereby agree that if the above numbered policy is reinstated by the company, such reinstatement shall be based upon the good faith of this statement, which is personally signed by me, and that the reinstatement, if granted, shall not take effect until all premiums in arrears, with interest, have been duly paid during my continued good health."

The trial court found that the health certificate was a blank form signed by Darling at his home in the presence of an agent of the company, and that it was filled out by the agent, in his own handwriting, after Darling had signed it. The premium due on September 3, 1936, was paid when the certificate was signed, was transmitted by the agent to the home office of the company, and on November 18 official receipt was given and the policy reinstated. The premium due on December 3 was paid on the last day of grace, Darling then being confined in the hospital. The insured died on March 11, 1937. Upon refusal to pay the policy the company tendered to the administrator the two premium payments of November 17, 1936, and January 3, 1937, without interest added. Interest

was also tendered (when the answer was filed in this action) in November, 1937.

Appellant contends that upon the facts disclosed subsequent to the death of the insured about four months after the reinstatement, the statements made by the insured in the application for reinstatement that he was in good health and had no illness subsequent to September 3, 1936, were not only untrue but could not have been made in good faith. At the time of the reinstatement on November 17, Darling had been off work since November 11. On November 24 he was taken acutely ill with heart trouble, went to the hospital, where he remained for some time, and then returned to his home.

In its finding of fact number four the trial court stated the situation connected with Darling's lay-off from work on November 11 as follows:

"On November 11, 1936, at around 1 o'clock p.m. of said day the said Ira C. Darling while at his work at the Frisco Railway shops in Fort Scott, Kan., complained of being ill but refused the proffer of medical attention or an ambulance at said time, stating that he would be all right in a short while and asked to be relieved from his work and the said Ira C. Darling at said time walked across the railroad tracks in the Frisco yards while cars and trains were passing back and forth a distance of perhaps a quarter of a mile to his home. The appearance of Ira C. Darling on arriving at his home was that of having the appearance of having a bad cold in that he was sneezing. On November 11 or 12, 1936, and in the evening, Ira C. Darling in company with his mother, Florence E. Darling, the plaintiff herein, went to Dr. R. L. Gench, a physician in Fort Scott, Kan., connected with and employed by the Newman and Young Clinic in said city, who were the Frisco company doctors, and at said time the said Dr. R. L. Gench took the blood pressure of Ira C. Darling but what that blood pressure may have been is not disclosed by the evidence. No stethoscope was applied and the evidence is silent as to any further examination made by Dr. Gench, save and except the taking of the blood pressure. At that time, Dr. R. L. Gench advised Ira C. Darling to lay off for awhile until his cold got better. The said Ira C. Darling did not see any physician from and after said call upon Dr. R. L. Gench until after November 17, 1936. From November 11, 1936, up to and including November 17, 1936, the apparent physical appearance of Ira C. Darling was substantially the same as it had been for several years immediately preceding that time and the said Ira C. Darling was not confined to his bed or to his home but was up every day, took his meals regularly and his appetite was good; he, the said Ira C. Darling, would go to the grocery store for groceries, and some two or three days after November 11, 1936, walked the quarter of a mile from his home down to and across the railroad tracks in the Frisco yards to the Frisco shops to confer with his foreman, Mr. W. A. Hutton, and returned on foot the quarter of a mile to his home."

We find the above statement amply supported by the evidence.

In support of its contention that the answers in the application for reinstatement were not given in good faith, the appellant relies principally upon statements appearing in an application made by Darling on February 11, 1937, for benefits under a health and accident policy which he carried, and also upon a marginal notation which appears upon Darling's application for hospital treatment.

The health policy was in the Mutual Benefit Health and Accident Association, which is an affiliate of the appellant company. When the application for benefits under the policy was made on February 11, 1937, Darling had been seriously ill for several months. A questionnaire containing twenty-seven questions was filled out. One question was: "When did you first notice you were beginning to get sick?" The answer, "November 12, 1936." Another question was: "What was the nature of your illness or disease?" The answer, "Dizziness and short breath." The answer to another question was that he had been treated by a doctor "every day including from November 12 to January 5." These answers, apparently made in February, 1937, do not accord with the facts otherwise established. Darling quit work on November 11 rather than on November 12 and the record negatives the statement that he had been treated by a doctor "every day including from November 12 to January 5." No proof was offered that the answers were in Darling's handwrit-
~d it may be noted that although the questionnaire form recites
~ffidavit is necessary before payment can be considered"
' executed.
' ~ve answers are inconsistent with the conten-
~xamined in the light of the other evi-
~~ging. On the back of the same
~f illness" by the attending
Q. "When were you
)36." Q. "What
~. "November 24,
~t." Assuming that
~lth insurance ques-
, attack on November
illness back to the day
f he had purposely mis-
he signed the certificate
policy on November 17 he

would not in February, 1937, deliberately create evidence to impeach his good faith in the matter.

There is no evidence that Darling had been advised by anybody prior to November 24 that he had heart trouble. Appellant's agent who filled out the application for reinstatement and discussed Darling's health policy in the affiliated company—for which he was also agent—on November 17, testified as follows concerning Darling's appearance on that day: Q. "There wasn't anything about the appearance of Ira Darling when you saw him that made you think he was ill?" A. "Not necessarily, Ira never did look very healthy." Q. "He didn't look healthy?" A. "He looked healthy enough." Q. "Did he look healthy enough?" A. "I reinstated him." Q. "There wasn't any difference in the physical appearance of Ira Darling as you saw him on November 17, 1936, from what it had been when you had seen him through the years?" A. "Well, not necessarily, no." Q. "You thought he had just come home from work?" A. "That's right." Q. "Mr. Pease, as a matter of fact didn't you figure he was in good health when you saw him all in his clothes?" A. "Well, that would be a supposition." Q. "You don't remember that you thought he had good health?" A. "He sure did, because I wouldn't reinstate, or I don't reinstate policies without going to some length." Q. "Did you ask him if he had been to any doctor?" A. "No." Q. "Did you ask him when was the last time he was off work?" A. "I don't think so." Appellee, Darling's mother, and with whom he lived, testified that he didn't complain when he came home on November 11 about any shortness of breath or difficulty in breathing, that the doctor told him to rest a few days until his cold was better and that was all that was said to him about his condition. Other similar testimony as to Darling's condition up to November 17, favorable to appellee, need not be recited.

The notation on the margin of the application for hospital treatment by the Frisco Employee's Hospital Association, hereinbefore referred to, reads as follows: "11-12-36, organic heart disease, auricular fibrillations. 2 Rx." Doctor Gench) was not a witness but another witness testified that this notation was in Doctor Gench's handwriting. However, there was no testimony as to when the notation was made, nor any evidence that Darling knew about it. Moreover, as heretofore noted, Doctor Gench's own affidavit stated that the heart disease symptom first appeared on *November 24*, a week after the application for reinstatement.

From an examination of the whole record it is reasonable to conclude that at the time the insured signed the application for reinstatement he had not been advised and had no reason to believe that he was suffering from any serious ailment. If he believed that he merely had a cold or other such indisposition which would require only a temporary lay-off, it cannot be held that bad faith is established by his failure to report it as an illness. All the more is this true in view of the fact that the agent of the company discussed with him personally the matter of his health policy, then in effect, at the time the reinstatement application was made, and that neither the company nor its agent, before reinstating the policy, submitted any specific questions such as an inquiry as to whether he had consulted a doctor subsequent to the lapsing of the policy. Furthermore, the agent personally called at the hospital about January 3, 1937, and collected a premium on the policy, and no question was raised as to the good faith of the insured until after his death.

The burden was upon the appellant company to show that the statements made in the health certificate on November 17, 1936, were not in good faith, but were fraudulently made. (*Jackson v. National Life and Acc. Ins. Co.*, 150 Kan. 86, 90 P. 2d 1097; *Day v. Nat. Res. Life Ins. Co.*, 144 Kan. 619, 62 P. 2d 925; *Priest v. Life Ins. Co.*, 116 Kan. 421, 227 Pac. 538; *Sharrer v. Insurance Co.*, 102 Kan. 650,.171 Pac. 622.)

We conclude that the trial court's finding that no intent to defraud the company was established and that the preponderance of the evidence indicated good faith in the signing of the health certificate on November 17, 1936, is well supported by the record.

The judgment is affirmed.